# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00741-CV

**Texas Mutual Insurance Company, Appellant**

**v.**

**Hofer Builders, Inc. and Hartford Underwriters Insurance Company, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-GN-17-005825, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In this workers' compensation case, Texas Mutual Insurance Company appeals from the trial court's order granting the motions for summary judgment of Hofer Builders, Inc. (HBI) and Hartford Underwriters Insurance Company (Hartford) and denying Texas Mutual's motion for summary judgment. In two issues, Texas Mutual challenges the trial court's jurisdiction and its finding that HBI's employee, who was injured out of state, was an employee as described in section 406.071 of the Texas Labor Code. *See* Tex. Lab. Code § 406.071.

For the following reasons, we affirm the portion of the trial court's order denying Texas Mutual's motion for summary judgment, but we reverse the portions of the order granting the motions for summary judgment of HBI and Hartford and remand the case to the trial court for further proceedings consistent with this opinion.

## Background

### Statutory Framework

To give context to the parties' dispute, we begin by providing a brief overview of the relevant statutory provision. Chapter 406 of the Texas Labor Code addresses workers' compensation insurance coverage, *see* Tex. Lab. Code §§ 406.001–.165, and subchapter D addresses extraterritorial coverage for employees who are injured while working out of state, *see id.* §§ 406.071–.075. Relevant here, section 406.071 provides:

(a)  An employee who is injured while working in another jurisdiction or the employee's legal beneficiary is entitled to all rights and remedies under this subtitle if:

    (1)  the injury would be compensable if it had occurred in this state; and

    (2)  the employee has significant contacts with this state or the employment is principally located in this state.

(b)  An employee has significant contacts with this state if the employee was hired or recruited in this state and the employee:

    (1)  was injured not later than one year after the date of hire; or

    (2)  has worked in this state for at least 10 working days during the 12 months preceding the date of injury.

*Id.* § 406.071. The "principal location of a person's employment is where: (1) the employer has a place of business at or from which the employee regularly works; or (2) the employee resides and spends a substantial part of the employee's working time." *Id.* § 406.072.

2

**The Controversy**

HBI is a Texas company in the construction business that does work in many different states across the country. It was incorporated in 1995, and its office is located in Saginaw, Texas. Tom Hofer is HBI's president. In November 2014, HBI hired David Hope, who was a Florida resident, as a supervisor. After Hofer and Hope's brother, who were in Texas, discussed offering Hope a job, Hope's brother called Hope, who was in Florida, from HBI's office in Texas and offered him a job. Hope previously had been employed by HBI and a predecessor company "for many years up to 2007," working on construction jobs in Texas and other states.[1]

After HBI mailed employment-related documents from its office in Texas to Hope in Florida, Hope began working for HBI at a construction site in Louisiana. HBI was a subcontractor on the Louisiana construction project, and Hartford was the workers' compensation carrier for the general contractor on the project. HBI paid for Hope's travel from Florida to Louisiana, lodging in Louisiana, and payroll expenses from the HBI office in Texas. According to Hofer, Hope's next assignments after the Louisiana project would have been at a project in Oklahoma and then a project in Texas. On December 29, 2014, Hope was injured while working at the Louisiana construction site. During the time period between his brother's phone call to him in November 2014 and his injury in December 2014, Hope was never physically in Texas.

---

[1] There is conflicting evidence concerning the date that Hope's previous employment with HBI ended. In one of his affidavits, Hofer averred: "David Hope worked for HBI (and its predecessor company) for many years up to 2014." In his affidavit filed in the related Louisiana workers' compensation proceeding, Hofer averred that Hope's previous employment with HBI ended in 2007. At his deposition in December 2016, Hofer testified that he "guess[ed]" that 2007 was the date and that he did not remember having any contact with Hope between 2007 and 2014.

At the time of Hope's injury, HBI had a "Worker's Compensation and Employers' Liability Insurance Policy" (HBI policy) with Texas Mutual for the state of Texas. *See generally* Tex. Ins. Code §§ 2054.102–.553; *see id.* § 2054.151 (explaining that Texas Mutual serves as "insurer of last resort"). HBI's policy included an endorsement entitled "Limited Reimbursement for Texas Employees Injured in other Jurisdictions" (the Endorsement). The Endorsement stated in relevant part:

> This policy does not provide "other states" insurance coverage. This endorsement provides reimbursement coverage to you for those Texas employees who are described in the Texas Labor Code §§ 406.071–.072. Therefore the coverage is for injuries to your Texas employees that occur in another state if (i) the injury would have been compensable had it occurred in Texas and (ii) the employee has significant contacts with Texas or the employment is principally located in Texas. An employee has significant contacts with Texas if the employee was hired or recruited in Texas, and (i) the employee was injured not later than one year after the date of hire; or (ii) has worked in Texas for at least ten working days during the twelve months preceding the date of injury.
>
> Employees hired or recruited by you outside Texas to work in another state are specifically excluded from the terms and provisions of this policy. If you conduct business in states other than Texas, you must comply with those state laws. You must promptly notify your agent before you begin work in any jurisdiction other than Texas. We are not authorized to provide workers' compensation insurance in any jurisdiction other than Texas. You are responsible for all of your legal obligations for your failure to comply with requirements of the workers' compensation laws of any jurisdiction other than Texas.

The first paragraph of the Endorsement imports statutory language from section 406.071 of the Labor Code that addresses extraterritorial coverage. *See* Tex. Lab. Code § 406.071. When the Endorsement applies, Texas Mutual agreed to reimburse HBI for benefits paid under the workers' compensation laws of other states, including Louisiana.

On January 5, 2015, HBI filed an "Employer's First Report of Injury" concerning Hope's injury with Texas Mutual, and a copy of the report was filed with the Department of Insurance, Division of Workers' Compensation (the Division). *See id.* § 409.005 (requiring employer to report work-place injury to insurance carrier and insurance carrier to file report with Division on behalf of policyholder). On January 14, 2015, Texas Mutual filed with the Division a "Notice of Denial of Compensability/Liability and Refusal to Pay Benefits" (Notice of Denial) based on its determination that Hope "[was] not eligible for Texas benefits because he [did] not meet the extraterritorial coverage requirements of Texas Labor Code § 406.071." *See* 28 Tex. Admin. Code § 124.3(a) (Tex. Dep't of Ins., Div. of Workers' Comp., Investigation of an Injury and Notice of Denial/Dispute) (requiring carrier to investigate injury and file notice of denial if carrier believes it is not liable). Texas Mutual's stated position was that "David Hope was not hired or recruited in Texas, does not have significant contacts with Texas and his employment is not principally located in Texas."

Hope did not seek to recover Texas workers' compensation benefits but sought to recover Louisiana workers' compensation benefits. On January 15, 2015, Hope filed a "Disputed Claim for Compensation" with the Louisiana's Office of Workers' Compensation, listing HBI as his employer and Texas Mutual as HBI's insurance carrier. Hope described the accident and his disability and listed a Florida address for his residence. In October 2016, Louisiana's Office of Workers' Compensation entered a judgment that ordered HBI to indemnify "for all payments made, or to be made, by Hartford on behalf of [the general contractor on the project] for work related injuries sustained by David Hope on December 29, 2014, while the direct employee of [HBI]." *See*

5

La. Rev. Stat. §§ 23:1061 (addressing principal contractor's liability to pay workers' compensation benefits as statutory employer and entitlement to indemnity), 1063 (stating that "principal contractor shall be entitled to indemnity from his subcontractor for compensation payments paid by the principal contractor on account of an accidental injury to the employee of the subcontractor").

**The Lawsuit**

Texas Mutual brought a declaratory judgment action against HBI in February 2016, seeking a declaration that it did not have a duty to defend, indemnify, or reimburse HBI regarding Hope's claim for Louisiana workers' compensation benefits. HBI answered and counterclaimed for breach of contract and declaratory judgment. HBI contended that Texas Mutual had breached the terms of the HBI policy by failing to reimburse HBI for the amount of Louisiana workers' compensation benefits paid to Hope and sought a declaration from the court that it was entitled to reimbursement coverage under the Endorsement. Shortly after the judgment against HBI was entered in the Louisiana proceeding, Hartford intervened in this lawsuit, asserting causes of action against Texas Mutual for declaratory judgment, contribution, and subrogation. Hartford sought a judgment against Texas Mutual in the amount that Hartford had paid to Hope for Louisiana workers' compensation benefits and declarations that Texas Mutual had a duty to defend, indemnify, and reimburse HBI regarding Hope's claim for Louisiana workers' compensation benefits and the indemnification required in the Louisiana workers' compensation judgment.

The parties filed competing motions for summary judgment with evidence. HBI's motion sought traditional summary judgment on the ground that the following three elements under the Endorsement had been met: (i) Hope's injury would be compensable if it had occurred in Texas;

6

(ii) Hope was hired or recruited in Texas; and (iii) Hope was injured not later than one year after he was hired. HBI attached evidence to its motion, including a copy of the HBI policy, an affidavit by Hofer, excerpts from the deposition of Hofer, and a copy of the judgment from the Louisiana proceeding. Hartford also sought summary judgment on the ground that the same three elements of the Endorsement had been met. Hartford's evidence included copies of the general contractor's policy with Hartford and the judgment from the Louisiana proceeding.

Texas Mutual's motion sought traditional summary judgment on its claims and the claims of HBI and Hartford on the ground that Hope was not a Texas employee because he was not hired or recruited in Texas.[2] Texas Mutual also argued that the trial court did not have jurisdiction to make a contrary finding to Texas Mutual's determinations in its Notice of Denial that Hope was not a Texas employee and that there was no coverage under the Endorsement because no party challenged its determinations administratively. Texas Mutual's summary judgment evidence included discovery responses, excerpts from the deposition of Hofer, documents from the Louisiana proceeding, and documents filed with the Division concerning Hope's injury. The parties also filed responses, supplemental briefing, and replies.

Following a hearing, the trial court signed an order that granted Hartford's and HBI's motions for summary judgment and denied Texas Mutual's motion for summary judgment.[3] The

---

[2] Although Texas Mutual also asserted that it was entitled to no-evidence summary judgment as to the claims of HBI and Hartford, Texas Mutual's arguments were based on evidence and, thus, we conclude that its motion was in substance a traditional motion for summary judgment. *See* Tex. R. Civ. P. 166a(c); *cf. id.* R. 166a(i).

[3] In the order, the trial court granted HBI's motion for summary judgment with the exception of its request for attorney's fees pursuant to the Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code § 37.009 (authorizing court to award "costs and reasonable and necessary

7

trial court thereafter signed an order that granted an agreed motion for severance and abatement, severing the claims that were disposed of by summary judgment into a new cause number.[4] This appeal followed from the new cause number.

## Analysis

### Jurisdiction

In its first issue, Texas Mutual argues that the trial court did not have jurisdiction to find that Hope was a Texas employee as defined by section 406.071 of the Labor Code because the Division has exclusive jurisdiction to make that determination in the first instance. In its order, the trial court made the following finding as to its jurisdiction:

> The Court finds that it has jurisdiction to determine the rights of the parties under the contract at issue in the above-referenced matter because the issue of whether reimbursement is triggered under the Limited Reimbursement for Texas Employees Injured in Other Jurisdictions endorsement of the Texas Mutual Insurance Company policy at issue lies outside the exclusive jurisdiction of the Division of Workers' Compensation of the Texas Department of Insurance.

Contrary to the trial court's finding of jurisdiction, Texas Mutual argues that it invoked the Division's exclusive jurisdiction when it filed the Notice of Denial with the Division. According to Texas Mutual, HBI and Hartford were "subclaimants" subject to the administrative process and, therefore, they were required to utilize this process to dispute the Notice of Denial. *See* Tex. Lab.

_____

attorney's fees as are equitable and just"). HBI has not challenged the denial of attorney's fees in this appeal, and the parties have not addressed this portion of the trial court's order in their briefing to this Court.

[4] The order granting summary judgment was interlocutory because Hartford also brought claims against HBI and those claims remained pending.

Code § 409.009 (authorizing person to file written claim with Division as "subclaimant"). As support for this position, Texas Mutual focuses on the reference in the Endorsement to sections 406.071 and 406.072 of the Labor Code for determining the scope of reimbursement coverage—"This endorsement provides reimbursement coverage to you for those Texas employees who are described in the Texas Labor Code §§ 406.071–.072." Texas Mutual contends that the Division had exclusive jurisdiction to determine whether Hope was a Texas employee as described in those sections of the Labor Code and, therefore, a Division determination of this question was a prerequisite to any reimbursement claim under the Endorsement. Because no party challenged the Notice of Denial administratively, Texas Mutual argues that it "has been relieved of any liability under the Policy" and, therefore, the only relief that the trial court had jurisdiction to grant was summary judgment for Texas Mutual.

"[U]nder the exclusive jurisdiction doctrine, the Legislature grants an administrative agency the *sole* authority to make an initial determination in a dispute." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). "Courts are not divested of subject matter jurisdiction they would otherwise possess unless a statute expressly grants an administrative agency exclusive jurisdiction." *National Am. Ins. Co. v. Texas Prop. & Cas. Ins. Guar.*, No. 03-09-00680-CV, 2013 Tex. App. LEXIS 10865, at *14–15 (Tex. App.—Austin Aug. 28, 2013, no pet.) (mem. op.) (citing *Subaru*, 84 S.W.3d at 221; *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 90 (Tex. App.—Austin 2004, pet. denied)). Whether an agency has exclusive jurisdiction depends on statutory construction and is a question of law that we review de novo. *In re Entergy Corp.*, 142 S.W.3d 316, 321–22 (Tex. 2004) (orig. proceeding); *Subaru*, 84 S.W.3d at 221.

9

The legislature has granted the Division exclusive jurisdiction over claims for Texas workers' compensation benefits. *See* Tex. Lab. Code §§ 408.001(a) (providing that "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage"), 410.251 (requiring exhaustion of remedies under subtitle prior to seeking judicial review under subchapter). Thus, an employee who has been denied a claim for Texas workers' compensation benefits must exhaust his or her administrative remedies before seeking judicial review, and the failure to do so generally relieves the carrier from liability for Texas benefits. *See id.* § 409.004 (stating that generally employee's failure to file claim for compensation with Division relieves employer and employer's insurance carrier of liability); *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 436–37 (Tex. 2012) (discussing exhaustion of administrative remedies in context of claim for Texas workers' compensation benefits and steps of administrative process).

In this case, however, Hope's entitlement to workers' compensation benefits was resolved under Louisiana law and, because he sought and received Louisiana benefits, he was not entitled to Texas benefits. *See* Tex. Lab. Code § 406.075 (stating that "injured employee who elects to pursue the employee's remedy under the workers' compensation laws of another jurisdiction and who recovers benefits under those laws may not recover under this subtitle"). Thus, the parties' dispute does not concern Texas benefits such that the requirement to exhaust administrative remedies under section 410.251 would apply. *See id.* §§ 410.002 (explaining that proceeding before Division "to determine the liability of an insurance carrier for compensation for an injury or death under this subtitle is governed by this chapter"), 410.251 (requiring exhaustion of administrative remedies).

10

As support for its position that HBI and Hartford were "subclaimants" who were required to challenge Texas Mutual's Notice of Denial by utilizing the administrative process, Texas Mutual cites *In re Accident Fund General Insurance Co.*, 543 S.W.3d 750 (Tex. 2017) (orig. proceeding); *Ruttiger*, 381 S.W.3d at 430; *In re Texas Mutual Insurance Co.*, No. 09-15-00265-CV, 2015 Tex. App. LEXIS 8511 (Tex. App.—Beaumont Aug. 13, 2015, orig. proceeding) (mem. op.); and *Service Lloyds Insurance Co. v. American Alternative Insurance Corp.*, 306 S.W.3d 414 (Tex. App.—Austin 2010, no pet.). Those cases, however, concerned disputed claims for relief under Texas law. *See Accident Fund Gen. Ins. Co.*, 543 S.W.3d at 751 (determining "whether the Division of Workers' Compensation has exclusive jurisdiction over statutory and tort claims alleging the [Texas] Act's 'bona fide offer of employment' process was misused to fabricate grounds for firing a covered employee"); *Ruttiger*, 381 S.W.3d at 433 (considering interaction of Texas Workers' Compensation Act with Insurance Code and Deceptive Trace Practices Act and whether 1989 restructuring of Act and subsequent amendments obviated need "to engraft an extra-statutory cause of action for breach of the duty of good faith and fair dealing onto the workers' compensation system"); *Texas Mut. Ins. Co.*, 2015 Tex. App. LEXIS 8511, at *2–3 (determining whether employer should have utilized administrative process against workers' compensation carrier as "subclaimant" to seek recovery of Texas benefits for its injured employee); *Service Lloyds*, 306 S.W.3d at 418–19 (determining whether workers' compensation carrier could be "subclaimant" in accordance with section 409.009 of Labor Code to recover reimbursement for Texas benefits paid and affirming administrative decision that carrier was entitled to reimbursement for Texas benefits paid). In

11

contrast to the disputes in those cases, the dispute here arises out of workers' compensation benefits paid under the laws of Louisiana to an employee who was injured in Louisiana.

Based on our review of the parties' competing claims that arise from the Louisiana benefits paid to Hope, we conclude that the trial court correctly found that it had jurisdiction "to determine the rights of the parties under the contract at issue." *See Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 381 n.6 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (explaining that "appeals panel specifically expressed no opinion on whether Sonic was entitled to reimbursement under the 'Other States Endorsement' for benefits it was required to pay pursuant to Alabama workers' compensation law" and that it recognized that Division "was limited to resolving issues concerning compensation under the Texas act"); *see also National Am.*, 2013 Tex. App. LEXIS 10865, at *18–20 (finding that Division's exclusive jurisdiction to determine Texas policy benefit claims did not extend to claims for reimbursement against carrier); Texas Workers' Comp. Comm'n, Appeal No. 020771, 2002 WL 1359119, at *3 (May 22, 2002) (explaining that its "jurisdiction is limited to consideration of issues relating to Texas workers' compensation benefits and any entitlement to reimbursement thereof" and concluding, in context of worker who was injured in Alabama and recovered Alabama benefits, that "general question of reimbursement of Alabama benefits is not and cannot be decided by the Commission's hearing officer"). On this basis, we overrule Texas Mutual's first issue.

**Summary Judgment**

In its second issue, Texas Mutual argues that, if this Court reaches the merits, the trial court's judgment must be reversed because "Mr. Hope was neither hired nor recruited in Texas."

12

Texas Mutual focuses on the undisputed summary judgment evidence that Hope was not physically present in Texas from the time that he was recruited and hired until his injury in Louisiana. On this basis, Texas Mutual argues that this Court should reverse the summary judgment rulings in favor of appellees and render summary judgment for Texas Mutual.

**Standards of Review**

"A trial court's ruling on a motion for summary judgment is reviewed de novo." *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018) (citing *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004)). "To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id.* (citing Tex. R. Civ. P. 166a(c)). When competing motions for summary judgment are filed, as is the case here, "each party bears the burden of establishing that it is entitled to judgment as a matter of law." *Id.* (quoting *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000)). When "the trial court grants one motion and denies the other, the reviewing court should determine all questions presented" and "render the judgment that the trial court should have rendered." *Id.*; *see Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). A summary judgment may not be affirmed on a ground that was not raised in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993).

Resolution of Texas Mutual's issue also requires this Court to interpret the Endorsement. "When construing an insurance policy, we ordinarily 'ascertain and give effect to the parties' intent as expressed by the words they chose to effectuate their agreement.'" *Wausau Underwriters Ins. Co. v. Wedel*, 557 S.W.3d 554, 557 (Tex. 2018) (quoting *In re Deepwater*

13

*Horizon*, 470 S.W.3d 452, 464 (Tex. 2015) (orig. proceeding)). Because the Endorsement incorporates sections 406.071 and 406.072 of the Labor Code, we also must interpret statutory language. Statutory construction similarly "'begins with the Legislature's words,' looking first to their plain and common meaning." *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 418 (Tex. 2017) (quoting *Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 865–66 (Tex. 1999)). "In conducting this analysis, 'we look at the entire act, and not a single section in isolation.'" *Id.* This "text-based approach to statutory construction requires us to study the language of the specific provision at issue, within the context of the statute as a whole, endeavoring to give effect to every word, clause, and sentence." *Id.* (quoting *Ritchie v. Rupe*, 443 S.W.3d 856, 867 (Tex. 2014)).

Further, because the Endorsement is a standard form approved by the Division, *see* Tex. Lab. Code § 406.051(b) ("The contract for coverage must be written on a policy and endorsements approved by the Texas Department of Insurance."); *see also* Tex. Ins. Code § 2052.002(b) (prohibiting insurance company from using form other than one prescribed under section for workers' compensation insurance unless form is endorsement that is "appropriate to company's plan of operation" and "submitted to and approved by the department"), we consider the Division's interpretation of sections 406.071 and 406.072 as long as its construction is reasonable and does not conflict with the statutory language, *see Wedel*, 557 S.W.3d at 557 (explaining that, when policy forms are mandated by state regulatory agency, "[a]s a practical matter, the actual intent involved in the precise words is as much or more the intent of the [agency] which prescribes the wording of the policy as it is the intent of the parties" (quoting *Progressive Cty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003))); *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404–05

14

(Tex. 2016) (explaining that "agency's construction of a statute may be taken into consideration by courts when interpreting statutes, but *deferring* to an agency's construction is appropriate only when the statutory language is ambiguous" (citing *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011))).

### Appellees' Motions for Summary Judgment

In their motions for summary judgment, HBI and Hartford argued that they were entitled to summary judgment on their declaratory judgment claims based on the reimbursement coverage provided in the Endorsement because the evidence conclusively established that Hope met the requirements of section 406.071 of the Labor Code. *See* Tex. Lab. Code § 406.071. Specifically, they argued that Hope met the requirements because: (i) Hope's injury would have been compensable had the injury occurred in Texas; (ii) he was hired or recruited in Texas; and (iii) he was injured not later than one year after he was hired. *See id.* § 406.071(a)(2), (b). Appellees' motions were based on Hope's alleged "significant contacts" with Texas under section 406.071(a)(2). *See id.* § 406.071(a)(2) (requiring employee to have "significant contacts with this state" or his or her employment to be "principally located in this state"). Under the significant contacts requirements, it was undisputed that Hope was injured within one year of being hired by HBI and that his injury would have been compensable had the injury occurred in Texas. *See id.* § 406.071(b). Thus, the decisive question is whether the summary judgment evidence conclusively established that Hope was hired or recruited in Texas. *See id.*; Tex. R. Civ. P. 166a(c); *see also Texas Emp'rs' Ins. Ass'n v. Dossey*, 402 S.W.2d 153, 156 (Tex. 1966) (concluding, under prior

15

version of extraterritorial provision of Texas workers' compensation laws, that whether employee has status of Texas employee generally is "function of the trier of fact").

The parties join issue with whether the place of hiring or recruitment is determined based on the employee's physical location when hired or recruited. In resolving this question, we begin our analysis with the plain language of the phrase "hired or recruited in this state" as it is used in the Endorsement. *See Wedel*, 557 S.W.3d at 557. The verbs "hire" and "recruit" are used disjunctively in the phrase; "hire" in the context of employment commonly means "to engage the personal services of for a fixed sum: employ for wages," *see Webster's Third New International Dictionary* 1072; "recruit" in the context of employment commonly means to offer "inducement to qualified personnel to enter a particular job or profession," *see id.* at 1899 (defining "recruitment"), and the proposition "in" generally is "used as a function word to indicate location or position in space," *see id.* at 1139. We also observe that the subject of the phrase is the employee—"An *employee* has significant contacts with Texas if the *employee* was hired or recruited in this state . . . ." *See* Tex. Lab. Code § 406.071(b) (emphasis added); *see also* Tex. Gov't Code § 311.011(a) (stating that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage").

The next paragraph in the Endorsement expressly provides: "Employees hired or recruited by you outside Texas to work in another state are specifically excluded from the terms and provisions of this policy." The subject of this sentence also is the "employee," further emphasizing that it is the employee's location when the employee is hired or recruited that is determinative. *See Webster's* at 1604 (defining "outside" as "a place or region that is situated beyond an enclosure,

16

boundary, or other limit" and "beyond the limits of"). Thus, the plain language of the phrase in the context of the Endorsement provides that the employee's location determines the place of hiring or recruitment for purposes of the significant-contacts analysis.

Notwithstanding the Endorsement's plain language, appellees argue that the use of "in" in the phrase "hired or recruited in this state" does not require the employee's physical presence in this state as long as the employee was hired to work in Texas at some point.[5] For this Court to adopt appellees' interpretation of the phase, however, we would have to add language to the phrase, such as "hired or recruited <u>to work </u>in this state," which we decline to do. *See Wedel*, 557 S.W.3d at 557; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (explaining that "[a] court may not judicially amend a statute by adding words that are not contained in the language of the statute" (quoting *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam))). Further, appellees cite cases to support their interpretation of the phrase "hired or recruited in this state" that were decided under prior versions of the extraterritorial statute. *See, e.g.*, *Southern Underwriters v. Gallagher*, 136 S.W.2d 590, 592 (Tex. 1940) (concluding that clause in extraterritorial coverage statute "'who has been hired in this State' . . . certainly does not have reference to the place where the hiring was originally made"); *Renner v. Liberty Mut. Ins. Co.*, 516 S.W.2d 239, 241 (Tex. App.—Waco 1974, no writ) (explaining that phrase, "'who has been hired in this State,' in the statute, does not refer to the place where the contract of hiring is made; and

---

[5] Appellees argue "an injured employee qualifies as a Texas employee if he resides in another state and is injured in another state, even before working in Texas, provided that work was contemplated in Texas and he has sufficient contacts with Texas, such as being hired or recruited 'in' Texas—a concept that does not require physical presence."

17

that the real question is the status of the employee at the time of injury with regard to being a Texas employee"); *Traders & Gen. Ins. Co. v. Collins*, 321 S.W.2d 178, 181–82 (Tex. App.—Houston 1959, writ ref'd n.r.e.) (discussing cases addressing employee's status as Texas employee); *Texas Emp. Ins. Ass'n v. Volek*, 69 S.W.2d 33, 35 (Tex. Comm'n App. 1934, holding approved) (concluding that clause "'hired in this state'" "certainly does not have reference to the place where the hiring was originally made").

The original version of the extraterritorial statute provided: "If an employee, who has been hired in this State, sustained injury in the course of his employment he shall be entitled to compensation according to the Law of this State, even though such injury was received outside of the State." Act of Mar. 28, 1917, 35th Leg., R.S., ch. 103, part I, § 19, 1917 Tex. Gen. Laws 269, 281; *see Dossey*, 402 S.W.2d at 155 (reciting text of original version of statute). In 1977, the statute was amended to extend extraterritorial coverage to an employee who was recruited in Texas, provided that the employee was a Texas resident: "If an employee, who has been hired or, if a Texas resident, recruited in this State, sustain[ed] injury in the course of his employment he shall be entitled to compensation according to the Law of this State, even though such injury was received outside of the State . . . ." Act of June 15, 1977, 65th Leg., R.S., ch. 420, § 1, 1977 Tex. Gen. Laws 1124, 1124. And, in 1989, the statute was further amended to remove the residency requirement as to recruitment and to add the sections on "significant contacts" and "principal location" that are currently contained in sections 406.071 and 406.072 of the Labor Code. Act of Dec. 13, 1989, 71st Leg., 2nd C.S., ch. 1, §§ 3.14–.16, 1989 Tex. Gen. Laws 1, 21; *see also* Act of May 22, 1993, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen Laws 987, 1155 (codified at Tex.

Lab. Code §§ 406.071, .072). In contrast with prior versions, the statute after 1989 contains separate inquiries depending on the relevant time frame—the significant contacts inquiry focuses on the employee's location during the hiring and recruitment process (prior to employment) while the principal location inquiry focuses on the employee's location once he or she has begun working (after employment). *See* Tex. Lab. Code §§ 406.071(b), .072. Thus, we find distinguishable appellees' cited cases that address prior versions of the extraterritorial statute.

We observe that Division decisions interpreting the statutory language in section 406.071(b) of the Labor Code generally have determined the place of hiring or recruitment based on the physical location of the employee. *See Wedel*, 557 S.W.3d at 557 (allowing court to consider agency interpretation when interpreting statute); *Hegar*, 500 S.W.3d at 404–05 (same); *see, e.g.*, Texas Workers' Comp. Comm'n, Appeal No. 000426, 2000 WL 33153043, at *2 (Apr. 10, 2000) (affirming hearing officer's finding that employee who was generally employed in Scotland was not hired or recruited in Texas); Texas Workers' Comp. Comm'n, Appeal No. 970361, 1997 WL 197376, at *2 (Apr. 10, 1997) (denying recovery of Texas benefits to employee who was Texas resident where evidence showed that he was in New Jersey when he was recruited and that "the employer had no contact with claimant in Texas"); Texas Workers' Comp. Comm'n, Appeal No. 960572, 1996 TX Wrk. Comp. LEXIS 4316, at *10 (May 3, 1996) (concluding that hearing officer's finding that employee was recruited in Texas was supported by evidence that showed that employee who resided in Texas received call at his Texas home about job in Louisiana and was "promised travel and lodging reimbursement if he came to the Louisiana job site" and that he received the reimbursement before hire date); Texas Workers' Comp. Comm'n, Appeal No. 951817,

19

1995 WL 776857, at *4–5 (Dec. 15, 1995) (concluding that evidence was sufficient to support hearing officer's finding that employee was recruited in Texas where employee "received a phone call, at his home in City, Texas, offering him employment"); Texas Workers' Comp. Comm'n, Appeal No. 93819, 1993 WL 457347, at *1, 4–6 (Oct. 26, 1993) (affirming hearing officer's finding that employee was recruited in state where evidence showed that employee was recruited while attending driving school in Texas and observing that it was undisputed that he was hired in Missouri "after he completed an application, took a physical and attended an orientation class" in Missouri); Texas Workers' Comp. Comm'n, Appeal No. 92724, 1993 WL 292247, at *1, 6–7 (Feb. 16, 1993) (concluding that evidence was sufficient to support hearing officer's finding that employee was not recruited or hired in Texas where evidence showed that employee "was interviewed in [New Mexico]" and "actually hired in [New Mexico] when [the employer] called him from [Texas office] to communicate the decision of the management team and discuss salary and starting dates").

We further observe that interpreting the phrase "hired or recruited in this state" by focusing on the employee's physical location is consistent with extraterritorial statutes as a whole. *See Murphy*, 518 S.W.3d at 418. Consistent with determining whether an employee has significant contacts based on the employee's location at the time the employee is hired or recruited, the focus of the inquiry as to the principal location of employment is on the employee's location after he or she has begun working—it is either "where" "the employer has a place of business at or from which the employee regularly works" or "the employee resides and spends a substantial part of the employee's working time." *See* Tex. Lab. Code § 406.072; *Webster's* at 2602 (defining "where" to mean "at or in what place" and stating that "where" refers to "location" or "place"). This

20

interpretation also adheres to the intent of Texas workers' compensation laws that the "entire statute is intended for the benefit of Texas employees and because industry in Texas should not have the burden of providing insurance to employees of other states." *Dossey*, 402 S.W.2d at 155 (quoting *Hale v. Texas Emp'rs' Ins. Ass'n.*, 239 S.W.2d 608 (Tex. 1951)).

The following summary judgment evidence was undisputed: (i) when Hope spoke with his brother by telephone in November 2014 about working for HBI, Hope was in Florida;[6] and (ii) after he accepted employment with HBI, Hope traveled directly to Louisiana where he was injured a short time later at the construction site. Applying the plain language of the phrase "hired or recruited in this state" to the evidence of Hope's physical location during the relevant time frame, the above-cited evidence supports a finding that Hope was not hired or recruited in Texas. *Cf. American States Ins. Co. v. Garza*, 657 S.W.2d 522, 523–24 (Tex. App.—Corpus Christi 1983, no writ) (concluding, under prior version of extraterritorial provisions of Texas workers' compensation laws, that employee who was injured on job in Indiana was entitled to Texas benefits because employee conclusively established that he was Texas resident and that "he was recruited here in Texas" where evidence showed that employee "was recruited in Brownsville to work . . . in a tomato canning plant in the state of Indiana").

As support for the trial court's summary judgment in their favor, appellees focus on the evidence that Hofer and HBI's office were in Texas; that the offer to Hope, payments to him, and instructions to him were made from Texas; that Hope's prior employment with HBI was in Texas;

---

[6] In his deposition, Hofer answered "yes," when asked if he "consider[ed] that phone call [with Hope's brother] the hiring of David Hope for the [Louisiana project]."

21

and that Hope would work on HBI projects in Texas in the future.  The evidence was undisputed that

Hofer decided to hire Hope while Hofer was in Texas.  In his affidavit, Hofer also averred:

> In all ways, David Hope was recruited and hired in Texas. . . .  As before, David Hope would be working for HBI on its projects across the United States, including those projects in Texas, as the circumstances of the company required.  At the time David Hope was hired in 2014, HBI had made arrangements to work on three upcoming projects: 1) the Penroe Apartments project in the State of Texas; 2) the Millennium project in Oklahoma; and 3) the Burbank Drive Apartments project in Louisiana. . . .  David Hope was not specifically hired to work on any one of these projects, but instead was hired to work on any or all of the projects as the course of his employment required.  His initial work was to be on the [Louisiana] project.  From there, he and the other HBI crew would be sent to next work on the Millennium project in Oklahoma and then the Penroe Apartments project in Texas.

As to Hofer's averment that "Hope was recruited and hired in Texas," it is a conclusory

statement that is not sufficient to establish that fact.  *See Lopez v. Bucholz*, No. 03-15-00034-CV,

2017 Tex. App. LEXIS 3071, at *9 (Tex. App.—Austin Apr. 7, 2017, no pet.) (mem. op.)

(explaining that conclusory statements in affidavits are not sufficient to raise fact issues).

We also conclude that the evidence that the telephone calls to Hope originated in

Texas and that HBI anticipated Texas work assignments for Hope after the completion of the

Louisiana project did not conclusively establish that Hope was hired or recruited in Texas.  *See*

Texas Workers' Comp. Comm'n, Appeal No. 92724, 1993 WL 292247, at *1–2, 6–7 (reciting that

employee was resident of New Mexico when he was contacted from employer's office in Texas by

telephone to discuss traveling salesperson position stationed in New Mexico that would take place

in Texas and other states and affirming hearing officer's decision that employee was not hired or

recruited in Texas and officer's rejection of contention that "the fact [the hiring] phone call

originated in Texas . . . proved claimant was hired in Texas"); *cf. Dossey*, 402 S.W.2d at 155–56 (explaining under prior version of extraterritorial statute that "employee has status of a Texas employee when he has been hired in this state to work in this state and in another state as the circumstances of his employer may require" and that "Texas employee status is fixed in the fact of his employment to work in Texas as well as in the other state"; reciting that employee was Texas resident, employee's contract to hire occurred in Texas, employer was domiciled in Texas, and employee performed work in Texas before injury in New Mexico; but finding that evidence was inconclusive and that determination of whether employee occupied status of Texas employee at time of injury was fact question). Applying the plain meaning of the words in the phrase "hired or recruited in this state" to the summary judgment evidence, we conclude that appellees did not conclusively establish that Hope was hired or recruited in Texas. *See* Tex. R. Civ. P. 166a(c) (requiring movant to show that no genuine issue of material fact exists); *Tarr*, 556 S.W.3d at 278.

On appeal, HBI and Hartford alternatively argue that, even if the summary judgment evidence did not conclusively establish that Hope was hired or recruited in Texas, a separate ground supports the trial court's summary judgment in their favor. They argue that the undisputed evidence established that Hope's employment was principally located in Texas. *See* Tex. Lab. Code § 406.072 (defining principal location of person's employment). Appellees, however, did not raise this specific ground in their motion for summary judgment and, therefore, we may not consider this ground as a basis for affirming the trial court's summary judgment in their favor. *See McConnell*, 858 S.W.2d at 342; *see also* Tex. R. Civ. P. 166a(c) (requiring motion for summary judgment to state "specific grounds").

Because we conclude that the summary judgment evidence did not conclusively establish that Hope was hired or recruited in Texas, we conclude that the trial court erred in granting appellees' motions for summary judgment. On this basis, we sustain Texas Mutual's second issue in part and turn to Texas Mutual's argument that the trial court should have granted its competing motion for summary judgment. *See Tarr*, 556 S.W.3d at 278; *Dallas Morning News*, 22 S.W.3d at 356; *Merriman*, 407 S.W.3d at 248.

### Texas Mutual's Motion for Summary Judgment

As was the case with appellees' motions, Texas Mutual's motion for summary judgment centered on the question of whether Hope was hired or recruited in Texas.[7] To be entitled to summary judgment, however, it was Texas Mutual's burden to conclusively establish that Hope was not an employee within the meaning of section 406.071(a) of the Labor Code. To do so, it would have had to conclusively establish that Hope was not hired or recruited in Texas and that, after his employment begun, he was not principally located in Texas. *See* Tex. Lab. Code § 406.071(a)(2) (providing alternatives of significant contacts with state or employment principally located in state); *Tarr*, 556 S.W.3d at 278 (explaining that, when competing motions for summary judgment are filed, "each party bears the burden of establishing that it is entitled to judgment as a matter of law"). Thus, even if the summary judgment evidence conclusively established that Hope was not hired or recruited in Texas, Texas Mutual would have had to specifically argue in its motion for summary

---

[7] In its motion for summary judgment, Texas Mutual also raised the arguments that it raises in its first issue that are based on the Division's exclusive jurisdiction as a ground that supported summary judgment in its favor. As previously stated, we have concluded that the trial court correctly found that it had jurisdiction to determine the rights of the parties under the Endorsement.

judgment and then conclusively establish that Hope's employment was not principally located in this state to be entitled to summary judgment. Although it argues in its briefing to this Court that "[i]t is undisputed that Mr. Hope's employment was not 'principally located in Texas,'" it did not expressly make this argument in its motion for summary judgment. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). On this basis, we conclude that the trial court did not err in denying Texas Mutual's motion for summary judgment and overrule Texas Mutual's issue to the extent that it challenges the trial court's denial of its motion for summary judgment.

## Conclusion

For these reasons, we affirm the portion of the trial court's order denying Texas Mutual's motion for summary judgment, but we reverse the portions of the trial court's order granting the motions for summary judgment of HBI and Hartford and remand the case to the trial court for further proceedings consistent with this opinion.

_____
Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed in Part; Reversed and Remanded in Part

Filed: July 3, 2019